## Olds *versus* Erie City.

1. An Act of May 1st 1861 authorized the councils of Erie to order any street to be paved, &c., and charge the expense against property abutting on the street, but such order should not be made, "except on the petition of a majority of the persons holding property on the street." The act further provided that when councils by ordinance directed the paving, &c., of a street, "the question whether a majority of the persons holding property thereon have petitioned therefor shall cease and determine." On a scire facias on a municipal claim for paving a street, under an ordinance of councils, *Held*, that evidence that there was not a majority of such property holders signing the petition was inadmissible.

2. There was a proviso in the act, "That no ordinance for any of the above-named purposes shall be passed until — days notice of the improvement prayed for has been given in the official paper of the city." Each proceeding of councils in their action upon the improvement was published as an item of news, on the next day only after it occurred, in the official paper, but no notice was published by direction of the councils. *Held* not to be a compliance with the act.

3. The act of councils was of a judicial nature, and such proceedings affecting the rights of individuals are nugatory unless upon reasonable notice.

4. The word "*days*" after the blank in the act indicated more than one publication.

October 20th 1875. Before AGNEW, C. J., SHARSWOOD, WILLIAMS, MERCUR, GORDON, PAXSON and WOODWARD, JJ.

Error to the Court of Common Pleas of *Erie county*: No. 193. Of October and November Term 1875.

This was a scire facias upon a municipal lien, issued January 18th 1873, by the city of Erie, against a piece of land on the east side of Peach street, between Seventh and Eighth streets, owned by L. W. Olds; the claim was filed January 7th 1870, for $273.16.

The Act of May 1st 1861, a supplement to the Act incorporating the city of Erie, sect. 1, authorized the councils of the city " to cause to be graded, paved, &c., or otherwise improved, any public street or part thereof, &c., and set with curb-stone," and levy and collect the costs by equal assessment from owners of property abutting on the improved street, provided the councils should not order any street to be graded, paved, &c., except on the petition of a majority of the persons holding or owning property on such street, &c. Sect. 2. When the councils should by ordinance direct the grading, paving, &c., of a street, "the question whether a majority of the persons holding or owning property thereon have petitioned therefor, shall cease and determine: Provided, that no ordinance for any of the above-named purposes shall be passed until — days notice of the improvement prayed for, has been given in the official paper of the city."

The Act of April 2d 1868, sect. 13, Pamph. L. 613, contained similar provisions.

The case was tried June 10th 1875, before Wetmore, P. J.

The plaintiff offered in evidence the petition to councils, signed

by defendant and others, "owners of real estate on Peach street between the north side of the public square and Fifteenth street," praying for the passage of an ordinance for paving Peach street between those points with Nicholson pavement, and with stone gutters, &c. The defendant objected because, amongst other reasons, the petition was not signed by a majority of the property-holders on the part of the street proposed to be paved; the evidence was admitted "pro formâ and questions reserved."

The plaintiffs also gave evidence that the petition was referred to a committee of councils, who reported that a majority of the owners of property on the part of the street proposed to be improved had signed the petition.

They then offered in evidence, ordinance of councils enacted June 1st 1868, authorizing the paving of Peach street in accordance with the prayer of the petition. The defendants objected to its admission, because, amongst other reasons, "the councils never published any official notice that they would take action on the petition and pass the ordinance." The offer was admitted "pro formâ and questions reserved."

They then gave evidence that by resolution of January 12th 1867, the councils selected the "Erie City Dispatch" as their official paper.

The plaintiff then offered in evidence in detail copies of the Erie City Dispatch of the dates of May 12th and 26th, June 2d and 9th 1868, containing notices of the presentation of the petition and action of councils on it, the report of the committee; and on July 14th 1868, of the passing of the ordinance; resolution in relation to Peach street and publication of the ordinance. The offers were severally objected to by the defendant, admitted "pro formâ and questions reserved."

Plaintiffs then gave other evidence tending to establish the claim, and rested.

The defendant, amongst other things, gave evidence by the editor of the "Erie City Dispatch" that "the proceedings of councils of May 11th 1868, were published by me on May 12th, as a matter of news, under my direction and discretion and at the expense of the Dispatch printing establishment. It was in no sense published by the order or dictation or at the expense of the city or councils, and was in no sense an official publication of the proceedings of councils: * * * was published only as a matter of courtesy and for public information, at my own instance and request solely." He also testified that the weekly proceedings of the councils were usually, but not regularly, published in the Dispatch.

The defendant gave other evidence not necessary to note in answer to the plaintiff's claim.

Each party submitted a number of points. The questions passed

upon by the Supreme Court are contained in the following part of the charge:—

* * * "On the part of the defendant we learn by his own evidence that the petition filed May 11th 1868, was presented to him for his signature, he refused to sign it without the words 'stone gutters' were added to it. He also states, that the persons who had the petition called again with the petition and had it interlined, with the words, 'with stone gutters,' and it was satisfactory and he signed it. The petition now has these words erased; when it was done or by whom is not clear by the evidence.

"The defendant under the evidence before the court asks us to say :—

"First. That the majority of the owners of land on the part of said street proposed to be paved have not petitioned the councils as required by the second section of the act of May 1st 1861.

"Second. That the notice of the improvement was not given in the official paper of the city, as required by said Act of Assembly.
\*     \*     \*     \*     \*     \*     \*     \*     \*     \*

"Fifth. The ordinance was not published in a way to denote it was an official act.

"We are of the opinion that when councils determine to make the improvement and adopt the ordinance directing the pavement of the street, the question of whether a majority of persons holding or owning property have petitioned therefor shall cease and determine.

"Without determining whether the record dated January 12th 1867, is sufficient to indicate the Erie Dispatch as the official organ; the report in that paper May 12th 1868, of the proceedings of the councils of May 11th, is not the notice required by law. It does not appear to be official; there is evidence that it was the act of the proprietor of the paper in obtaining and publishing it as an item of news. It refers to the time when it will be acted upon, and has none of the requirements required to make it a legal notice and official act.

"Can the defendant avail himself of this defence? He signed the petition for the pavement, he knew therefore that there was a petition asking the city authorities to make the improvement. If the publication had been made in an official paper, as required by law, it would have been constructive notice, but when actual knowledge exists, constructive notice is not necessary. *     *     *

"The ordinance is sufficiently specific in the terms, and contains all that was required to make it valid, and its publication on the 14th day of July 1868, in the Daily Dispatch, was a sufficient publication. Our conclusion is that the plaintiff is entitled to recover."

The verdict was for the plaintiff for $361.98.

The defendant took a writ of error, and amongst others assigned the charge of the court for error.

*Chapman, Benson & Brainard*, for plaintiff in error.—The signing of the petition by a majority of the property owners was essential to give the councils jurisdiction: Harbach *v.* Toledo, 11 Ohio State R. 219; Rathbun *v.* Acker, 18 Barbour 393; Pittsburg *v.* Walters, 19 P. F. Smith 365; 2 Dillon on Municipal Corp., sects. 470, 471, 639, 642, 643. Notice of petition should have been published before any act was done: Myrick *v.* La Cross, 17 Wiscon. 442; State *v.* Jersey City, 2 Dutch..(N. J.) 444; State *v.* Jersey City, 2 Id. 309; State *v.* Jersey City, 4 Zabr. 662; State *v.* Newark, 1 Dutch. 399; State *v.* Elizabeth, 2 Vroom 547. Notice of assessment: Lowell *v.* Wentworth, 6 Cush. 221; Williams *v.* Detroit, 2 Mich. 560; Nashville *v.* Weiser, 54 Ill. 245; Butler *v.* Chicago, 56 Id. 341. Unofficial notice is no notice: Arthurs *v.* Smathers, 2 Wright 40; North Whitehall Tsp., 11 Wright 156.

*J. R. Thompson* and *G. W. Lathy & Son*, for defendant in error.—The defendant knew of the proceedings of councils, as to him that was as operative as if there had been an official publication: Darlington *v.* Commonwealth, 5 Wright 68.

Mr. Justice GORDON delivered the opinion of the court, November 8th 1875.

This is a scire facias on a municipal claim, filed by the city of Erie against a lot of ground, owned by the defendant below.

The claim is for the cost of paving the street in front of this lot. The authority of the city is supposed to be derived from the Acts of 1861 and 1868, which empower the select and common councils of said city to pave and curb the streets and collect the cost and expense of the work and materials therefor from the owners of the lots abutting thereon.

To the exercise of these powers, certain conditions precedent are prescribed. The first is that a majority of the property-holders fronting on the street proposed to be improved, shall petition therefor. If there were nothing more it would be a good defence that this condition had not been complied with, for without such compliance the councils had no jurisdiction: Pittsburg *v.* Walter, 19 P. F. Smith 365. The second section, however, of the Act of 1861, obviates this difficulty, for it prescribes, that when said councils shall by ordinance, direct the paving and grading of any street within the city, the question whether a majority of persons holding or owning property thereon have petitioned for the same, shall cease and determine.

There is, however, this important proviso, to wit: "That no ordinance for any of the above-named purposes shall be passed until — days notice of the improvement prayed for has been given in the official paper of the city." We thus observe that inquiry into the character of the petition is barred, but this second condi-

[Olds *v.* Erie City.]

tion, to wit, publication, becomes material and necessary to the jurisdiction of the councils inasmuch as it is substituted for that which, but for the preceding part of the second sect. of the Act would be material and necessary. As the action of the councils concludes all precedent questions arising from the petition, this public notice is provided in order that every citizen, who is in any degree interested, may have a chance of being heard: Erie City *v.* Bootz, 22 P. F. Smith 196, per Sharswood, J. The action of the councils, under this act, was quasi judicial in its character and it is a fundamental rule that all such proceedings where they affect the rights or property of the citizen are nugatory if unaccompanied by reasonable notice. In the case in hand no such notice as that required by the statute was given. The imperative requisition is publication in the official paper of the city for — days. The word "days" after the blank being plural, indicates more than one, and we need hardly say that a mere editorial publication of the general doings of the councils is not the notice required by the statute.

For these reasons the judgment of the court below is reversed.